IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN MATTHEW CHANCEY, FAIR COURTS AMERICA, and RESTORATION PAC<br><br>Plaintiffs,<br><br>v.<br><br>THE ILLINOIS STATE BOARD OF ELECTIONS; IAN LINNABARY, *in his official capacity as Chair of the Illinois State Board of Elections*; CASANDRA B. WATSON, WILLIAM J. CADIGAN, LAURA K. DONAHUE, TONYA L. GENOVESE, CATHERINE S. MCCRORY; WILLIAM M. MCGUFFAGE, *and* RICK S. TERVEN, SR., *in their official capacities as members of the Illinois State Board of Elections*; KWAME RAOUL, *in his official capacity as Illinois Attorney General*,<br><br>Defendants. | Case No. 22-4043<br><br>**Complaint** |

**Introduction**

1. This is a First Amendment challenge to two recently enacted provisions of the Illinois Election Code, 10 ILCS 5/1.1 *et seq*. The first prohibits a judicial candidate from receiving contributions from any "out-of-state person." 10 ILCS 5/9-8.5(b-5)(1)(B). The second provision prohibits an independent expenditure committee established to support or oppose a judicial candidate from accepting contributions from any single person in a cumulative amount that exceeds $500,000 in any election cycle. 10 ILCS 5/9-8.5(b-5)(1.2)

1

2. The Supreme Court has recognized that contributions to political campaigns are protected speech, and thus a government must prove that restrictions on campaign contributions pass First Amendment scrutiny. Here, the two restrictions on contributions in judicial races cannot meet this test.

3. Plaintiffs seek declaratory relief that these two provisions are unconstitutional, as well as preliminary and permanent injunctions preventing Defendants from enforcing these two provisions of the Election Code.

**Parties**

4. John Matthew Chancey is currently a citizen of Texas. He formerly was an Illinois resident for 63 years, where he practiced law from 1978 to 2016. After he retired from legal practice, he moved to Texas. He seeks to donate money to individuals, whom he has known personally either as friends or through legal practice, running in various Illinois judicial races but is prohibited from doing so by Illinois law.

5. Fair Courts America is an independent expenditure committee that has submitted registration paperwork to the Illinois State Board of Elections that seeks to make independent expenditures in support of or in opposition to certain Illinois judicial candidates and wishes to receive contributions from individual donors in excess of $500,000.

6. Restoration PAC is an independent expenditure committee registered with the Illinois State Board of Elections that seeks to make independent expenditures in support of or in opposition to certain Illinois judicial candidates and wishes to receive contributions from individual donors in excess of $500,000.

Additionally, Restoration PAC would like to contribute more than $500,000 to Fair Courts America.

7. Defendant Illinois State Board of Elections (the "Board"), which maintains an office in Cook County, is the unit of Illinois state government responsible for investigating violations of, and holding hearings for enforcing the provisions of, the Illinois Election Code. 10 ILCS 5/9-18.

8. Defendant Ian Linnabary is the Chairman of the Board.

9. Defendant Casandra B. Watson is Vice Chair of the Board.

10. Defendants William J. Cadigan, Laura K. Donahue, Tonya L. Genovese, Catherine S. McCrory, William M. McGuffage, and Rick S. Terven, Sr., are members of the Board.

11. Defendant Kwame Raoul is the Attorney General of the State of Illinois and maintains an office in Cook County, Illinois. He has the power to prosecute violations of the Illinois Election Code's provisions restricting campaign contributions under 10 ILCS 5/9-25.2.

12. All Defendants are sued in their official capacities.

## Jurisdiction and Venue

13. This case raises claims under the First and Fourteenth Amendments of the U.S. Constitution and 42 U.S.C. § 1983. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

14. Venue is proper because a substantial portion of the events giving rise to the claims occurred in the Northern District of Illinois. 28 U.S.C. § 1391(b)(2).

**Facts**

15. Enacted on November 15, 2021, Illinois Senate Bill 536 (Public Act 102-0668) amended the Illinois Election Code by, among other things, prohibiting "a candidate political committee established to support a candidate seeking nomination to the Supreme Court, Appellate Court, or Circuit Court" from accepting "contributions from any out-of-state person." 10 ILCS 5/9-8.5(b-5)(1)(B).

16. The Election Code defines "candidate political committee" as "the candidate himself or herself or any natural person, trust, partnership, corporation, or other organization or group of persons designated by the candidate that accepts contributions or makes expenditures during any 12-month period in an aggregate amount exceeding $5,000 on behalf of the candidate." 10 ILCS 5/9-1.8.

17. The Election Code defines "contribution" as follows:

   (1) a gift, subscription, donation, dues, loan, advance, deposit of money, or anything of value, knowingly received in connection with the nomination for election, election, or retention of any candidate or person to or in public office or in connection with any question of public policy;

   (1.5) a gift, subscription, donation, dues, loan, advance, deposit of money, or anything of value that constitutes an electioneering communication made in concert or cooperation with or at the request, suggestion, or knowledge of a candidate, a political committee, or any of their agents;

   (2) the purchase of tickets for fund-raising events, including but not limited to dinners, luncheons, cocktail parties, and rallies made in connection with the nomination for election, election, or retention of any person in or to public office, or in connection with any question of public policy;

   (3) a transfer of funds received by a political committee from another political committee;

   (4) the services of an employee donated by an employer, in which case the contribution shall be listed in the name of the employer,

    except that any individual services provided voluntarily and without promise or expectation of compensation from any source shall not be deemed a contribution; and

 (5) an expenditure by a political committee made in cooperation, consultation, or concert with another political committee.

10 ILCS 5/9-1.4(A).

 18. The Election Code excludes the following from the definition of "contribution":

 (a) the use of real or personal property and the cost of invitations, food, and beverages, voluntarily provided by an individual in rendering voluntary personal services on the individual's residential premises for candidate-related activities; provided the value of the service provided does not exceed an aggregate of $150 in a reporting period;

 (b) the sale of any food or beverage by a vendor for use in a candidate's campaign at a charge less than the normal comparable charge, if such charge for use in a candidate's campaign is at least equal to the cost of such food or beverage to the vendor;

 (c) communications by a corporation to its stockholders and executive or administrative personnel or their families;

 (d) communications by an association to its members and executive or administrative personnel or their families;

 (e) voter registration or other campaigns encouraging voting that make no mention of any clearly identified candidate, public question, political party, group, or combination thereof;

 (f) a loan of money by a national or State bank or credit union made in accordance with the applicable banking laws and regulations and in the ordinary course of business, but the loan shall be listed on disclosure reports required by this Article; however, the use, ownership, or control of any security for such a loan, if provided by a person other than the candidate or his or her committee, qualifies as a contribution; or

 (g) an independent expenditure.

10 ILCS 5/9-1.4(B).

19. Further, for purposes of 10 ILCS 5/9-8.5, which contains the out-of-state judicial ban on contributions, the term "contribution" also is defined as:

    (A)    expenditures made by any person in concert or cooperation with, or at the request or suggestion of, a candidate, his or her designated committee, or their agents; and

    (B)    the financing by any person of the dissemination, distribution, or republication, in whole or in part, of any broadcast or any written, graphic, or other form of campaign materials prepared by the candidate, his or her campaign committee, or their designated agents.

10 ILCS 5/9-8.5(b-5)(2).

20. The Election Code defines "person" as "a natural person, trust, partnership, committee, association, corporation, or any other organization or group of persons." 10 ILCS 5/9-1.6.

21. The Election Code does not define the terms "out-of-state" or "out-of-state person."

22. The Board, however, adopted rules set forth in the Illinois Administrative Code, that among other things define "out-of-state person" as "includ[ing] but is not limited to any of the following:"

    A)    a natural person whose primary residence lies outside the geographic boundaries of the State of Illinois;

    B)    a person, as defined in Code Section 9-1.6, other than a natural person, who does not operate an office, branch location, or place of business situated in this State, and does not have employees, agents or representatives in this State."

Ill. Admin. Code tit. 26, § 100.75(j)(2).

23. The out-of-state ban applies only to contributions to judicial candidate committees; the Election Code provides no ban or limit on out-of-state donations to

political parties or independent expenditure committees that participate in judicial elections.

24. Similarly, Illinois enacted Illinois House Bill 0716 (Public Act 102-0909) on May 27, 2022, which among other things, added 10 ILCS 5/9-8.5(b-5)(1.2) to the Illinois Election Code. That provision provides that "an independent expenditure committee established to support or oppose a candidate seeking nomination, election, or retention to the Supreme Court, the Appellate Court, or the Circuit Court may not accept contributions from any single person in a cumulative amount that exceeds $500,000 in any election cycle." *Id*.

25. Section 9-8.5(b-5)(1.2) of the Election Code further provides that "[a]ny contribution [to an independent expenditure committee by an individual] in excess of [$500,000 in an election cycle] shall escheat to the State of Illinois." Independent expenditure committees are required to immediately forward any amount received by an individual that exceeds $500,000 to the State Treasurer who shall deposit the funds into the State Treasury. 10 ILCS 5/9-8.5(b-5)(1.2).

26. The Illinois Election Code defines "independent expenditure committee" as "any trust, partnership, committee, association, corporation, or other organization or group of persons formed for the exclusive purpose of making independent expenditures during any 12-month period in an aggregate amount exceeding $5,000 in support of or in opposition to (i) the nomination for election, election, retention, or defeat of any public official or candidate or (ii) any question of public policy to be submitted to the electors." "Independent expenditure committee"

7

also includes "any trust, partnership, committee, association, corporation, or other organization or group of persons that makes electioneering communications that are not made in connection, consultation, or concert with or at the request or suggestion of a public official or candidate, a public official's or candidate's designated political committee or campaign, or an agent or agents of the public official, candidate, or political committee or campaign during any 12-month period in an aggregate amount exceeding $5,000 related to (i) the nomination for election, election, retention, or defeat of any public official or candidate or (ii) any question of public policy to be submitted to the voters." 10 ILCS 5/9-1.8(f).

27. The Illinois Election Code does not restrict the amount of money that an independent expenditure committee established to support any candidate—other than a candidate seeking nomination, election, or retention to the Supreme Court, the Appellate Court, or the Circuit Court—may receive from any single person in a cumulative amount in any election cycle. Indeed, any independent expenditure committee, except those established to support a candidate seeking nomination, election, or retention to the Supreme Court, the Appellate Court, or the Circuit Court, may receive an unlimited amount of money from any person. *See* 10 ILCS 5/9-8.5(e-5) ("An independent expenditure committee may accept contributions in any amount from any source, provided that the committee files the document required by Section 9-3 of this Article and files the disclosure reports required by the provisions of this Article.").

28. The Election Code does not place any limit on the amount of independent expenditures a person can make for or against a judicial candidate.

29. The Election Code provides that if the political committee does not return or otherwise dispose of a contribution received in violation of 10 ILCS 5/9-8.5, it is "subject to a civil penalty not to exceed 150% of the total amount of the contribution." 10 ILCS 5/9-8.5(j).

30. Further, if a complaint is filed with the Board against a political committee for a violation of Section 9-8.5, and the Board finds a violation and directs the political committee to cease or correct such violation or otherwise comply with the Election Code and such person fails or refuses to comply with such order within the time specified, then the Board may impose a civil penalty on such person in an amount not to exceed $5,000. 10 ILCS 5/9-23. The Board may also refer such violation to the Attorney General or a State's Attorney for prosecution. *Id*.

31. Elsewhere, the Election Code generally limits the amount of contributions that a person or entity may give directly to a candidate committee for all races, including judicial races: $5,000 from any individual, $10,000 from any corporation, labor organization, or association, and $50,000 from a candidate political committee or political action committee.[1] Political party committees may give unlimited

---

[1] Every other year, in odd-numbered years, the Board is directed to adjust these limits for inflation. 10 ILCS 5/9-8.5(b). For example, for the latest odd-numbered year, the Board adjusted the limit on individual contributions to a candidate to $6,000. *See* https://www.elections.il.gov/DocDisplay.aspx?Doc=/Downloads/CampaignDisclosure/PDF/ContributionSummary.pdf&MID=287.

9

contributions to a candidate committee during a general election, but are subject to certain limits in primary elections. Independent expenditure committees may not give any money directly to a candidate committee. 10 ILCS 5/9-8.5(b).

32. However, the Election Code lifts the limits on contributions directly to candidates in two circumstances: First, if a candidate or a candidate's immediate family contributes to the candidate's political committee during the 12 months prior to an election in an aggregate amount of more than (i) $250,000 for statewide office or (ii) $100,000 for all other elective offices. 10 ILCS 5/9-8.5(h). Second, if an individual or independent expenditure committee make independent expenditures in support of or in opposition to a candidate in an aggregate amount of more than (i) $250,000 for statewide office or (ii) $100,000 for all other elective offices in an election cycle. 10 ILCS 5/9-8.5(h-5). In either of these circumstances, the limits on direct contributions to candidates set forth in10 ILCS 5/9-8.5(b) are removed and individuals, corporations, labor organizations, associations, political committees, and political action committees may contribute unlimited funds directly to a candidate.

**Injury to Plaintiffs**

33. John Matthew Chancey, formerly an Illinois resident of 63 years where he practiced law, is currently a citizen of Texas. He seeks to donate money to Mark Curran for Illinois Supreme Court—with whom he worked in the Lake County State's Attorney's Office—Reginald Mathews for Circuit Court in Lake County—with whom he also worked in the Lake County State's Attorney's Office—Jeff DeLong for Circuit Court in Effingham County—against whom he litigated cases—

10

and Mary Christine Heins for Circuit Court in Jackson County—whom he has been friends with since high school.

34. Because Mr. Chancey lives in Texas and not Illinois, he is prevented from making these donations under Section 9-8.5(b-5)(1)(B) of the Illinois Election Code.

35. Fair Courts America is an independent expenditure committee that has submitted registration paperwork to the Board that seeks to make independent expenditures in support of or in opposition to certain Illinois judicial candidates and wishes to receive contributions from donors in excess of $500,000.

36. Fair Courts America is prevented from doing so by Section 9-8.5(b-5)(1.2) of the Illinois Election Code.

37. Restoration PAC is an independent expenditure committee registered with the Board that seeks to make independent expenditures in support of or in opposition to certain Illinois judicial candidates and wishes to receive contributions from at least one individual donor in excess of $500,000.

38. Restoration PAC is prevented from doing so by Section 9-8.5(b-5)(1.2) of the Illinois Election Code.

39. Restoration PAC would also like to make contributions in an amount excess of $500,000 to Fair Courts America in furtherance of its efforts to support or oppose Illinois judicial candidates but is prevented from doing so by Section 9-8.5(b-5)(1.2) of the Illinois Election Code.

11

## Count I

**The ban on contributions to judicial candidates from out-of-state persons set forth in 10 ILCS 5/9-8.5(b-5)(1)(B) prohibits core political speech in violation of the First Amendment.**

40. The allegations contained in all preceding paragraphs are incorporated herein by reference.

41. Campaign contribution limits are generally subject to intermediate scrutiny requiring the government to establish that they are "closely drawn" to serve a sufficiently important interest. *Wis. Right to Life State PAC v. Barland*, 664 F.3d 139, 152 (7th Cir. 2011).

42. However, "the First Amendment stands against . . . restrictions distinguishing among different speakers, allowing speech by some but not others." *Citizens United v. FEC*, 558 U.S. 310, 340 (2010).

43. Thus, laws that restrict a certain class of people from making political contributions and thus burden political speech are "subject to strict scrutiny, which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Id.* (cleaned up). Such laws are "presumptively invalid." *Schultz v. City of Cumberland*, 228 F.3d 831, 840 (7th Cir. 2000); *see also SD Voice v. Noem*, 380 F. Supp. 3d 939, 948 (D.S.D. 2019) (applying strict scrutiny to a "total ban on certain out-of-state contributions").

44. The United States Supreme Court has recognized only one government interest that can justify campaign-finance restrictions: the prevention of actual or apparent quid pro quo corruption. *See Barland*, 664 F.3d at 155.

45. In the case of campaign-finance restrictions in judicial elections, the Supreme Court has recognized an additional compelling interest in "preserving public confidence in the integrity of the judiciary." *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 444 (2015).

46. In this case, only one group of people—"out-of-state persons"—are completely prohibited from making political contributions to judicial candidates.

47. Defendants must prove that the out-of-state contribution ban furthers a government interest in either the prevention of actual or apparent quid pro quo corruption or preserving public confidence in the integrity of the judiciary, and then must show that the restriction is narrowly tailored to achieve those interests.

48. Defendants cannot show that the Election Code's ban on contributions to judicial candidates by out-of-state persons is narrowly tailored to serve a government interest in preventing quid pro quo corruption.

49. Nor can Defendants show that the ban on contributions to judicial candidates by out-of-state persons is narrowly tailored to serve a government interest in preserving public confidence in the integrity of the judiciary.

50. Further, the prohibition on contributions by out-of-state persons would also fail intermediate scrutiny because the prohibition is not closely drawn to serve the governments interests in preventing quid pro quo corruption and preserving public confidence in the integrity of the judiciary.

51. Therefore, the ban on contributions to judicial candidates by out-of-state persons set forth in 10 ILCS 5/9-8.5(b-5)(1) violates the First Amendment.

## Count II

### The $500,000 contribution limit from a person to an independent expenditure committee established to support or oppose a judicial candidate set forth in 10 ILCS 5/9-8.5(b-5)(1.2) violates the First Amendment.

52. The allegations contained in all preceding paragraphs are incorporated herein by reference.

53. A "contribution limit involving significant interference with associational rights must be closely drawn to serve a sufficiently important interest." *Davis v. FEC*, 554 U.S. 724, 740 n.7 (2008) (quoting *McConnell v. FEC*, 540 U.S. 93, 231 (2003)) (internal quotation marks omitted).

54. The Supreme Court has recognized only one interest sufficiently important to outweigh the First Amendment interests implicated by contributions for political speech: preventing corruption or the appearance of corruption. *Davis*, 554 U.S. at 741.

55. In the case of campaign-finance restrictions in judicial elections, the Supreme Court has recognized an additional compelling interest in "preserving public confidence in the integrity of the judiciary." *Williams-Yulee*, 575 U.S. at 444.

56. Defendants must prove that the $500,000 contribution limit from a person to an independent expenditure committee established to support or oppose a judicial candidate set forth in 10 ILCS 5/9-8.5(b-5)(1.2) furthers a government interest in either the prevention of actual or apparent quid pro quo corruption or preserving public confidence in the integrity of the judiciary, and then must show that the restriction is closely drawn to achieve those interests. This Defendants cannot do.

57. The Seventh Circuit has held that limits on contributions to independent expenditure committees cannot further the government's interest in the prevention of actual or apparent quid pro quo corruption. *Barland*, 664 F.3d at 154 ("the anticorruption rationale cannot serve as a justification for limiting fundraising by groups that engage in independent spending on political speech.").

58. Likewise, the government's $500,000 contribution limit from a person to an independent expenditure committee established to support or oppose a judicial candidate is not closely drawn to further an interest in preserving public confidence in the integrity of the judiciary for several reasons. First, although a person may only make contributions to an independent expenditure committee established to support or oppose a judicial candidate up to $500,000, a person may make unlimited independent expenditures in support or oppositions of a candidate in a judicial race.

59. Second, there can be no argument that limiting the amount a person can contribute to an independent expenditure committee to $500,000 is closely drawn to the interest in preserving judicial integrity because the Election Code removes all limits on direct contributions to a candidate when an independent expenditure committee spends more than $100,000 in a particular judicial race, 10 ILCS 5/9-8.5(h), or when a candidate self-funds in excess of $100,000, 10 ILCS 5/9-8.5(h).

60. Therefore, the $500,000 contribution limit from a person to an independent expenditure committee established to support or oppose a judicial candidate set forth in 10 ILCS 5/9-8.5(b-5)(1.2) violates the First Amendment.

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

A. Enter a judgment declaring that Section 9-8.5(b-5)(1)(B) of the Illinois Election Code, which bars out-of-state persons from contributing money to judicial candidates, violates the First Amendment to the United States Constitution.

B. Enter a judgment declaring that Section 9-8.5(b-5)(1.2) of the Illinois Election Code, which bars independent expenditure committees established to support or oppose a candidate seeking nomination, election, or retention to the Supreme Court, the Appellate Court, or the Circuit Court, from accepting contributions from any single person in a cumulative amount that exceeds $500,000 in any election cycle violates the First Amendment of the United States Constitution;

C. Preliminarily and permanently enjoin Defendants from enforcing Section 9-8.5(b-5)(1)(B) and Section 9-8.5(b-5)(1.2) of the Illinois Election Code;

D. Award Plaintiffs their reasonable costs, expenses, and attorneys' fees pursuant to any applicable law; and

E. Award Plaintiffs any additional relief the Court deems just and proper.

Dated: August 3, 2022

Respectfully submitted,

John Matthew Chancey, Fair Courts America, and Restoration PAC

By: /s/ Jeffrey M. Schwab
One of their Attorneys

Jeffrey M. Schwab
Reilly Stephens
Liberty Justice Center
440 North Wells Street, Suite 200
Chicago, Illinois 60654
312-637-2280
jschwab@libertyjusticecenter.org
rstephens@libertyjusticecenter.org