IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN MATTHEW CHANCEY, FAIR COURTS AMERICA, and RESTORATION PAC <br><br> Plaintiffs, <br><br> v. <br><br> THE ILLINOIS STATE BOARD OF ELECTIONS; IAN LINNABARY, *in his official capacity as Chair of the Illinois State Board of Elections*; CASANDRA B. WATSON, WILLIAM J. CADIGAN, LAURA K. DONAHUE, TONYA L. GENOVESE, CATHERINE S. MCCRORY; WILLIAM M. MCGUFFAGE, *and* RICK S. TERVEN, SR., *in their official capacities as members of the Illinois State Board of Elections*; KWAME RAOUL, *in his official capacity as Illinois Attorney General*, <br><br> Defendants. | Case No. 22-04043 <br><br><br><br> **Memorandum in Support of Motion for Preliminary Injunction** |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

FACTS ................................................................................................................... 1

STANDARD OF REVIEW .................................................................................... 5

ARGUMENT ......................................................................................................... 5

    I.    Plaintiffs are likely to succeed on the merits of their claims
        that the contribution limits in judicial races violate the First
        Amendment................................................................................................5

        A.    Plaintiffs are likely to succeed on the merits of their claim
               that the ban on contributions from out-of-state persons to
               judicial candidates violates the First Amendment (Count I) .............5

        B.    Plaintiffs are likely to succeed on the merits of their claim
               that the limit on contributions to independent
               expenditure committees that make expenditures in
               judicial races violates the First Amendment. (Count II) ...................9

    II.    The denial of Plaintiffs' First Amendment right to participate
         in Illinois' upcoming election constitutes irreparable harm ..................14

    III.    Traditional legal remedies are inadequate to resolve the
          irreparable harm ...................................................................................14

    IV.    Plaintiffs and the public will suffer substantial harm without
         a preliminary order while there would be no harm to
         Defendant should the Court enter a preliminary order .........................15

    CONCLUSION ................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Backpage.com, LLC v. Dart,* 807 F.3d 229 (7th Cir. 2015) ......................................... 14

*Alaska Pub. Offices Comm'n v. Patrick*, 494 P.3d 53 (Alaska 2021) ......................... 10

*Bd. of Trs. of Glazing Health & Welfare Tr. v. Chambers,*
941 F.3d 1195 (9th Cir. 2019) .................................................................................. 10

*Buckley v. Valeo*, 424 U.S. 1 (1976) ...................................................................... 9, 11

*Christian Legal Soc'y v. Walker,* 453 F.3d 853 (7th Cir. 2006) ................................. 15

*Citizens United v. FEC*, 558 U.S. 310 (2010) ................................................... 6, 11, 13

*Davis v. FEC*, 554 U.S. 724 (2008) ............................................................................ 10

*Elrod v. Burns*, 427 U.S. 347 (1976) ......................................................................... 14

*Green Party of Conn. v. Garfield*, 616 F.3d 189 (2d Cir. 2010) ................................... 7

*Higher Soc'y of Ind. v. Tippecanoe Cty.*, 858 F.3d 1113 (7th Cir. 2017) .................... 15

*Korte v. Sebelius*, 735 F.3d 654 (7th Cir. 2013) .......................................................... 5

*Landell v. Sorrell*, 382 F.3d 91 (2d Cir. 2004) ............................................................ 8

*Long Beach Area Chamber of Com. v. City of Long Beach,*
603 F.3d 684 (9th Cir. 2010) .................................................................................... 10

*Mays v. Dart*, 974 F.3d 810 (7th Cir. 2020) ................................................................ 5

*McConnell v. FEC*, 540 U.S. 93 (2003) ..................................................................... 10

*McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185 (2014) .............................. 6, 7, 11

*N.C. Right to Life, Inc. v. Bartlett*, 168 F.3d 705 (4th Cir. 1999) ................................. 6

*N.C. Right to Life, Inc. v. Leake*, 525 F.3d 274 (4th Cir. 2008) ................................. 10

*N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483 (2d Cir. 2013) ........................... 10

*Nat'l People's Action v. Wilmette*, 914 F.2d 1008 (7th Cir. 1990) ............................. 14

*Planned Parenthood of Ind. & Ky., Inc. v. Adams*, 937 F.3d 973 (7th Cir. 2019) ..... 15

*Preston v. Leake*, 660 F.3d 726 (4th Cir. 2011) .......................................................... 6

*Randall v. Sorrell*, 548 U.S. 230 (2006) ..................................................................... 7

*Republican Party of Minn. v. White*, 536 U.S. 765 (2002) .............................. 11, 12, 14

*Republican Party of N.M. v. King*, 741 F.3d 1089 (10th Cir. 2013) ........................... 10

*Schultz v. City of Cumberland*, 228 F.3d 831 (7th Cir. 2000) .................................... 6

*SD Voice v. Noem*, 380 F. Supp. 3d 939 (D.S.D. 2019).................................................. 6

*Siefert v. Alexander*, 608 F.3d 974 (7th Cir. 2010) ..................................................... 12

*SpeechNow.org v. FEC*, 599 F.3d 686 (D.C. Cir. 2010)......................................... 10, 11

*Texans for Free Enter. v. Texas Ethics Comm'n*, 732 F.3d 535 (5th Cir. 2013) ......... 10

*Thalheimer v. City of San Diego*, 645 F.3d 1109 (9th Cir. 2011) ............................... 10

*Thompson v. Hebdon*, 7 F.4th 811 (9th Cir. 2021) ....................................................... 8

*We the People PAC v. Bellows*, 519 F. Supp. 3d 13 (D. Me. 2021) ............................. 8

*Williams-Yulee v. Fla. Bar*, 575 U.S. 433 (2015).................................................... 7, 11

*Wis. Right to Life State PAC v. Barland,* 664 F.3d 1397th Cir. 2011)....... 6, 10, 11, 12

**Statutes**

10 ILCS 5/9-1.6 ................................................................................................................ 2

10 ILCS 5/9-8.5 ........................................................................................................ *passim*

Ill. Admin. Code tit. 26, § 100.75(j)(2) ......................................................................... 2

**INTRODUCTION**

Plaintiffs seek a preliminary relief from two provisions of the Illinois Election Code. First, Plaintiff John Matthew Chancey—a former Illinois resident who retired to Texas and seeks to donate money to friends and former colleagues running for judicial office in Illinois—asks this Court to enjoin a provision of the Illinois Election Code that prevents him and other "out-of-state person[s]" from donating to judicial candidate committees, 10 ILCS 5/9-8.5(b-5)(1), because it violates the First Amendment. Second, Plaintiffs Fair Courts America and Restoration PAC ask this Court to enjoin Illinois' $500,000 limit that a person or entity may contribute to independent expenditure committees established to support or oppose judicial candidates. 10 ILCS 5/9-8.5(b-5)(1.2). The contribution limit violates the committees' First Amendment rights to freedom of speech and association.

**FACTS**

**The Out-Of-State Ban**

Illinois Senate Bill 536, enacted November 15, 2021, prohibits "a candidate political committee established to support a candidate seeking nomination to the Supreme Court, Appellate Court, or Circuit Court" from accepting "contributions from any out-of-state person." 10 ILCS 5/9-8.5(b-5)(1); Compl. ¶ 15. This new restriction is in addition to Illinois' existing limit on the amount a person may contribute to a candidate or candidate committee: $6,000 per year for individuals, $12,000 per year for corporations, labor organizations, and associations, and

1

$59,900 for candidate political committees or political action committees.[1] 10 ILCS 5/9-8.5(b). Compl. ¶ 31. The Election Code defines "person" as "a natural person, trust, partnership, committee, association, corporation, or any other organization or group of persons." 10 ILCS 5/9-1.6; Compl. ¶ 20. Although not defined in the Election Code, Compl. ¶ 21, the Illinois Administrative Code defines "out-of-state person" as "includ[ing] but is not limited to any of the following: A) a natural person whose primary residence lies outside the geographic boundaries of the State of Illinois; B) a person, as defined in Code Section 9-1.6, other than a natural person, who does not operate an office, branch location, or place of business situated in this State, and does not have employees, agents or representatives in this State." Ill. Admin. Code tit. 26, § 100.75(j)(2); Compl. ¶ 22. "Contribution" is defined broadly to include not only the simply writing of a check, but also a variety of activities that entail the provision of a "thing of value." Compl. ¶¶ 17–19. The out-of-state ban applies only to contributions to candidate committees; there is no limit on out-of-state donations to political parties or independent expenditure groups. Compl. ¶ 23.

**The Independent Donation Limit**

Illinois House Bill 0716, enacted May 27, 2022, added 10 ILCS 5/9-8.5(b-5)(1.2) to the Election Code. It provides that "an independent expenditure committee

---

[1] Every other year, in odd-numbered years, the Board is directed to adjust these limits for inflation. 10 ILCS 5/9-8.5(b). https://www.elections.il.gov/DocDisplay.aspx?Doc=/Downloads/CampaignDisclosure/PDF/ContributionSummary.pdf&MID=287.

established to support or oppose a candidate seeking nomination, election, or retention to the Supreme Court, the Appellate Court, or the Circuit Court may not accept contributions from any single person in a cumulative amount that exceeds $500,000 in any election cycle." 10 ILCS 5/9-8.5(b-5)(1.2), Compl. ¶ 24. Any funds from a single person in excess of the $500,000 limit are to be confiscated by the state of Illinois for its own treasury. Compl. ¶ 25. The Election Code does not limit donations to independent expenditure groups for non-judicial candidates; only independent groups that are established to support or oppose judicial candidates are subject to a donation limit. Compl. ¶ 27. The Election Code does not place any limit on the amount of money a person can make in independent expenditures for or against a judicial candidate. Compl. ¶ 28. Failure to adhere to the independent donation limit subjects independent groups to civil penalties, and potentially a referral to the Illinois Attorney General's Office for prosecution. Compl. ¶¶ 29–30.

**Other Provisions of the Election Code**

The Election Code lifts its limits on contributions directly to candidates set forth in 10 ILCS 5/9-8.5(b) in two circumstances: First, the limits are lifted if, in the 12 months before an election, a candidate or a candidate's immediate family contributes to the candidate's political committee in an aggregate amount of more than (i) $250,000 for statewide office or (ii) $100,000 for all other elective offices. 10 ILCS 5/9-8.5(h), Compl. ¶ 32. Second, if an individual or independent expenditure committee make independent expenditures supporting or opposing a candidate in

an aggregate amount of more than (i) $250,000 for statewide office or (ii) $100,000 for all other elective offices in an election cycle. 10 ILCS 5/9-8.5(h-5), Compl. ¶ 32.

**Plaintiffs**

Plaintiff John Matthew Chancey lived and worked as a lawyer in Illinois for 63 years before retiring to Texas. Compl. ¶ 4. He wishes to contribute to candidates for judicial office in Illinois who he knows either personally or professionally from his six decades as a resident and member of the state's legal community. *Id.* These include Mark Curran for Illinois Supreme Court—with whom he worked in the Lake County State's Attorney's Office—Reginald Mathews for Circuit Court in Lake County—with whom he also worked in the Lake County State's Attorney's Office—Jeff DeLong for Circuit Court in Effingham County—against whom he litigated cases—and Mary Christine Heins for Circuit Court in Jackson County—whom he has been friends with since high school. Compl. ¶ 33. Because Chancey lives in Texas and no longer in Illinois, Section 9-8.5(b-5)(1)'s ban on out-of-state contributions prevents him from making these contributions. Compl. ¶ 34.

Both Fair Courts America and Restoration PAC are independent expenditure committees that intend to make independent expenditures in support of or in opposition to judicial candidates in Illinois. Compl. ¶¶ 35, 37. Both would like to solicit and receive contributions in excess of $500,000 from a single entity, but prohibited from doing so under Section 9-8.5(b-5)(1.2). Compl. ¶¶ 36, 38. In addition, Restoration PAC desires to make contributions in excess of $500,000 to Fair Courts America and potentially other committees. Compl. ¶ 39.

## STANDARD OF REVIEW

To obtain a preliminary injunction, a plaintiff must show that: (1) it will suffer irreparable harm; (2) traditional legal remedies are inadequate; and (3) it has a likelihood of prevailing on the merits of its claims. *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). If a plaintiff makes such a showing, the court proceeds to a balancing analysis, where the court must weigh the harm the denial of the preliminary injunction would cause the plaintiff against the harm to the defendant if the court were to grant it. *Id*. This balancing process involves a sliding scale approach: the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa. *Id*. Cases arising in the First Amendment context focus on the likelihood of success on the merits, as the other factors are generally presumed. *Korte v. Sebelius*, 735 F.3d 654, 666 (7th Cir. 2013).

## ARGUMENT

I. **Plaintiffs are likely to succeed on the merits of their claims that the contribution limits in judicial races violate the First Amendment.**

Plaintiffs are likely to succeed on the merits of their First Amendment claims.

A. **Plaintiffs are likely to succeed on the merits of their claim that the ban on contributions from out-of-state persons to judicial candidates violates the First Amendment (Count I).**

The ban on contributions to judicial candidates cannot pass First Amendment scrutiny—either under strict scrutiny or intermediate scrutiny. That is because the ban does not further the state's interest either in preventing quid pro quo corruption or preserving judicial integrity, nor is the ban narrowly tailored to serve

either of these interests because contributions by out-of-state persons are not more threatening to these interests than contributions by persons in Illinois.

Generally, limitations on contributions to candidates must be "'closely drawn' to serve a 'sufficiently important interest.'" *Wis. Right to Life State PAC v. Barland,* 664 F.3d 139, 152 (7th Cir. 2011). However, laws that restrict a certain class of people from making political contributions are "subject to strict scrutiny, which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Citizens United v. FEC*, 558 U.S. 310, 340 (2010) (cleaned up). Such laws are "presumptively invalid." *Schultz v. City of Cumberland*, 228 F.3d 831, 840 (7th Cir. 2000); *see also SD Voice v. Noem*, 380 F. Supp. 3d 939, 948 (D.S.D. 2019) (applying strict scrutiny to a "total ban on certain out-of-state contributions"); *Preston v. Leake*, 660 F.3d 726, 737 (4th Cir. 2011) (describing *N.C. Right to Life, Inc. v. Bartlett*, 168 F.3d 705, 716 (4th Cir. 1999) by saying it applied strict scrutiny to "a total ban on lobbyists' contributions").

Moreover, the "prevention of 'actual or apparent quid pro quo corruption is the only interest the Supreme Court has recognized as sufficient to justify campaign-finance restrictions.'" *Id.* at 469; *see McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 192 (2014) (plurality opinion) ("Any regulation must instead target what we have called 'quid pro quo' corruption or its appearance."). "There is no right more basic in our democracy than the right to participate in electing our political leaders," and "[t]he right to participate in democracy through political contributions is protected by the First Amendment." *McCutcheon,* 572 U.S. at 191.

In the context of judicial elections specifically, the Supreme Court has also acknowledged the related anti-corruption "interest in judicial integrity." *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 448 (2015).

Illinois' out-of-state ban fails both strict scrutiny and intermediate scrutiny for several reasons. For one, it is an outright *ban*—if Chancey were to give any Illinois judicial candidate anything of value, even a single dollar, he would violate the law. No state interest can justify that. *See McCutcheon*, 572 U.S. at 210 (emphasizing the lack of tailoring for a provision that "ban[ned] all contributions of any amount"). Indeed, "a ban on contributions causes considerably more constitutional damage, as it wholly extinguishes that 'aspect of the contributor's freedom of political association.'" *Green Party of Conn. v. Garfield*, 616 F.3d 189, 204 (2d Cir. 2010) (quoting *Randall v. Sorrell*, 548 U.S. 230, 246 (2006)). A ban infringes a contributor's constitutional right to make the symbolic expression of support evidenced by a contribution as it precludes the symbolic expression that comes with a small contribution. *Green Party of Conn.*, 616 F.3d at 204.

Out-of-state contributors pose no special risk of corruption, nor does a donation from a resident of Texas present any threat to the integrity of Illinois's judiciary. Judges are not more likely to be influenced by money from a Texan than by money from a resident of Cook County. If anything, money from outside the state is more likely to be *disinterested*, in that a resident of Illinois is far more likely to avail themselves of, or be sued in, Illinois courts, and to be invested in the outcome of politically charged issues that Illinois courts consider.

Nor does Illinois have an interest in preventing residents of other states from influencing its elections. Confronted with a similar out-of-state contribution ban from Alaska, the Ninth Circuit found that "[a]t most, the law aims to curb perceived 'undue influence' of out-of-state contributors—an interest that is no longer sufficient after" *McCutcheon* and *Citizens United. Thompson v. Hebdon*, 7 F.4th 811, 824 (9th Cir. 2021). Alaska could not "demonstrate that the risk of quid pro quo corruption turns on a donor's particular geography." *Id.* at 825. The same is true in Illinois. As in the Ninth Circuit, here there is "no indication that the First Amendment interest in protecting political access waxes or wanes depending on the representative relationship between contributor and candidate." *Id.* at 826 n.6.

Other courts around the country are in agreement. In *Landell v. Sorrell*, the Second Circuit struck down Vermont's law prohibiting a candidate, political party, or political action committee from receiving more than twenty-five percent of their donations from out-of-state donors as unconstitutional under the First Amendment. 382 F.3d 91, 146 (2d Cir. 2004). Likewise, in *We the People PAC v. Bellows*, a district court granted a preliminary injunction preventing Maine's Secretary of State from enforcing Maine's law that restricted out-of-state petition circulators. 519 F. Supp. 3d 13, 40 (D. Me. 2021); *see also SD Voice,* 380 F. Supp. at 948 (D.S.D. 2019) (striking down a ban on out-of-state contributions to South Dakota ballot question committees).

The Framers designed the First Amendment "to secure the widest possible dissemination of information from diverse and antagonistic sources" and thereby "to

assure unfettered interchange of ideas for bringing about of political and social changes desired by the people." *Buckley v. Valeo*, 424 U.S. 1, 49 (1976). Illinois may not "restrict the speech of" out-of-state supporters "to enhance the relative voice of others." *Id.* at 48–49. Such discrimination "is wholly foreign to the First Amendment." *Id.* There is no state interest in controlling "the relative ability of individuals and groups to influence the outcome of elections." *Id.* at 48. Plaintiffs are therefore likely to succeed on the merits of their claim that the out-of-state ban violates the First Amendment.

    **B.**    **Plaintiffs are likely to succeed on the merits of their claim that the limit on contributions to independent expenditure committees that make expenditures in judicial races violates the First Amendment. (Count II)**

The $500,000 limit on contributions to independent expenditure committees by an individual person or entity cannot pass First Amendment scrutiny. The limit does not further the state's interest in preventing quid pro quo corruption because independent expenditures, by definition, cannot result in such corruption. Further, the limit does not further the government's interest in preserving judicial integrity, nor is the ban closely drawn to serve that interest because the Election Code places no limit on the amount that a person or entity may make in independent expenditures and allows unlimited direct contributions to judicial candidates when a certain amount of independent expenditures—which are less than the contribution limit—are made in a judicial race or when a candidate self-funds over a certain amount of money.

A "contribution limit involving significant interference with associational rights must be closely drawn to serve a sufficiently important interest." *Davis v. FEC*, 554 U.S. 724, 740 n.7 (2008) (quoting *McConnell v. FEC*, 540 U.S. 93, 231 (2003)) (internal quotation marks omitted). The Seventh Circuit has held that under either strict scrutiny or under intermediate "closely drawn" scrutiny, limitations on contributions to independent expenditure committees violate the First Amendment. *Barland*, 664 F.3d at 154 ("the anticorruption rationale cannot serve as a justification for limiting fundraising by groups that engage in independent spending on political speech."); *see also Alaska Pub. Offices Comm'n v. Patrick*, 494 P.3d 53, 58 (Alaska 2021) (agreeing, and collecting cases).[2] As with restrictions on what sort of people can contribute to candidates, the "Supreme Court has recognized only one interest sufficiently important to outweigh the First Amendment interests implicated by contributions for political speech: preventing corruption or the appearance of corruption." *SpeechNow.org v. FEC*, 599 F.3d 686, 689 (D.C. Cir. 2010). The prevention of influence is not enough; "government regulation may not target the general gratitude a candidate may feel toward those who support him or

---

[2] *See Long Beach Area Chamber of Com. v. City of Long Beach*, 603 F.3d 684, 698 (9th Cir. 2010); *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1121 (9th Cir. 2011), overruled on other grounds by *Bd. of Trs. of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019); *N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013); *N.C. Right to Life, Inc. v. Leake*, 525 F.3d 274, 293 (4th Cir. 2008); *Texans for Free Enter. v. Texas Ethics Comm'n*, 732 F.3d 535, 537-40 (5th Cir. 2013); *Republican Party of N.M. v. King*, 741 F.3d 1089, 1103 (10th Cir. 2013).

his allies, or the political access such support may afford." *McCutcheon,* 572 U.S. at 192. "Any regulation must instead target what [the Court has] called 'quid pro quo' corruption or its appearance." *Id.*

In the case of campaign-finance restrictions in judicial elections, the Supreme Court has recognized an additional compelling interest in "preserving public confidence in the integrity of the judiciary." *Williams-Yulee*, 575 U.S. at 444. But "[t]here is an obvious tension between the article of [Illinois'] popularly approved Constitution which provides that judges shall be elected," and the state's new insistence on curtailing the speech that takes place in those elections. *Republican Party of Minn. v. White*, 536 U.S. 765, 787 (2002).

It is well-established that "independent expenditures do not corrupt or create the appearance of quid pro quo corruption," and therefore "contributions to groups that make only independent expenditures also cannot corrupt or create the appearance of corruption." *Barland*, 664 F.3d at 154 (quoting *SpeechNow.org*, 599 F.3d at 694); *see also Citizens United,* 558 U.S. at 357 ("The absence of prearrangement and coordination of an expenditure with the candidate or his agent . . . alleviates the danger that expenditures will be given as a quid pro quo for improper commitments from the candidate.") (quoting *Buckley*, 424 U.S. at 47). As the Seventh Circuit held in *Barland*, "after *Citizens United* there is no valid governmental interest sufficient to justify imposing limits on fundraising by independent-expenditure organizations." 664 F.3d at 154; *see also SpeechNow.org*, 599 F.3d at 693. (In *Citizens United*, "the Court held that the government has *no* anti-corruption

interest in limiting independent expenditures.") (emphasis in original). In *Barland*, the Seventh Circuit held that Wisconsin's $10,000 limit on contributions to independent expenditure committees was unconstitutional. 664 F.3d at 154. Similarly, in *SpeechNow.org*, the D.C. Circuit held that a federal law limiting contributions to independent expenditure committees to $5,000 per person per year was unconstitutional under *Citizens United*. 599 F.3d at 695. In this case, for the same reason set forth in *Barland* and *SpeechNow.org*, this Court must find that Illinois's $500,000 limit on contributions to independent expenditure committees that participate in judicial elections does not further the government's interest in preventing quid pro quo corruption or its appearance.

Similarly, there can be no risk that contributions to independent expenditure committees undermines Illinois' interest in the integrity of its judiciary. In *White*, "the Supreme Court cautioned against vague invocations of 'impartiality.'" *Siefert v. Alexander*, 608 F.3d 974, 981 (7th Cir. 2010). As the Seventh Circuit has explained, it is not some abstract sense of faith in or admiration for the judiciary in which a state has an interest; only "[i]nsofar as impartiality refers to 'the lack of bias for or against either *party* to the proceeding,' it is a compelling state interest." *Id.* (quoting *White*, 536 U.S. at 775) (emphasis in original)).

It is not clear how contributions to an independent expenditure committee that then makes independent expenditures in a judicial race undermines the government's interest in preserving judicial integrity. "By definition, an independent expenditure is political speech presented to the electorate that is not

coordinated with a candidate." 664 F.3d at 153 (quoting *Citizens United*, 130 S. Ct. at 910).

The $500,000 limit on contributions to independent expenditure committees participating in judicial elections is not narrowly tailored or closely drawn to serve the government's interest in preserving judicial integrity. First, the Election Code provides no limit on the amount of money a person may make in independent expenditures in a judicial race. Thus, it makes no sense to limit the amount that a person can contribute to an independent expenditure committee who makes independent expenditures in a judicial race.

Second, there can be no argument that limiting contributions to independent expenditure committees is necessary to preserve judicial integrity because elsewhere the Election Code removes all limits on *direct contributions* to a judicial candidate when an individual or independent expenditure committee makes independent expenditures in a race in excess of $100,000, 10 ILCS 5/9-8.5(h-5), or when a candidate self-funds in excess of $100,000, 10 ILCS 5/9-8.5(h). It makes no sense to prevent an independent expenditure committee from receiving more than $500,000 from any one individual or entity, while allowing anyone to contribute directly to a candidate committee if an individual or independent expenditure committee makes independent expenditures, or a candidate self-funds, in a judicial race in excess of $100,000. That would place a higher restriction on an activity less likely to lead to corruption (contributions to an independent expenditure committee) while placing no restrictions whatsoever on an activity way more likely to lead to

corruption (direct expenditures to a candidate). This provision completely undermines any purpose Illinois has for limiting contributions to an independent expenditure committee. "A law cannot be regarded as protecting an interest of the highest order, and thus as justifying a restriction upon truthful speech, when it leaves appreciable damage to that supposedly vital interest unprohibited." *White*, 536 U.S. at 780.

Illinois' arbitrary independent-donation limit therefore cannot survive either strict scrutiny or intermediate scrutiny. Thus, Plaintiffs are likely to succeed on the merits of their claim that the independent donation limit is unconstitutional.

## II. The denial of Plaintiffs' First Amendment right to participate in Illinois' upcoming election constitutes irreparable harm.

The "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury" for purposes of the issuance of a TRO and preliminary injunction. *Backpage.com, LLC v. Dart,* 807 F.3d 229, 239 (7th Cir. 2015) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

## III. Traditional legal remedies are inadequate to resolve the irreparable harm.

Traditional legal remedies (i.e., money damages) are inadequate. The injury here is literally "irreparable"—there is no way for Illinois to later make whole the lost opportunity to exercise First Amendment freedoms now. *Nat'l People's Action v. Wilmette,* 914 F.2d 1008, 1013 (7th Cir. 1990) ("injunctions are especially appropriate in the context of [F]irst [A]mendment violations because of the inadequacy of money damages").

**IV. Plaintiffs and the public will suffer substantial harm without a preliminary order while there would be no harm to Defendant should the Court enter a preliminary order.**

As explained above, Plaintiffs will suffer irreparable harm if an injunction is not issued. The converse is not true of the government; there is no harm in preventing enforcement of an unconstitutional policy. *Planned Parenthood of Ind. & Ky., Inc. v. Adams*, 937 F.3d 973, 991 (7th Cir. 2019). The public, however, benefits from "preliminarily enjoining the enforcement of a statute that is probably unconstitutional." *Higher Soc'y of Ind. v. Tippecanoe Cty.*, 858 F.3d 1113, 1116 (7th Cir. 2017). Moreover, "injunctions protecting First Amendment freedoms are always in the public interest." *Christian Legal Soc'y v. Walker,* 453 F.3d 853, 859 (7th Cir. 2006).

## CONCLUSION

Plaintiffs respectfully requests that their motion be granted.


Dated: August 3, 2022                      Respectfully Submitted,

                                           John Matthew Chancey, Fair Courts
                                           America, and Restoration PAC

                                           By: /s/ Jeffrey M. Schwab_____
                                           One of their Attorneys

Jeffrey M. Schwab
Reilly Stephens*
Liberty Justice Center
440 North Wells Street, Suite 200
Chicago, Illinois 60654
312-637-2280
jschwab@libertyjusticecenter.org
rstephens@libertyjusticecenter.org

*application to the General Bar for the Northern District of Illinois submitted

**Certificate of Service**

I, Jeffrey M. Schwab, an attorney, certify that on August 3, 2022, I filed Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction on Defendants' counsel through the Court's electronic case filing system and caused it to be served on Defendants with the Summons and Complaint via a special process server as follows:

Defendants Illinois State Board of Elections, Ian Linnabary, Casandra B. Watson, William J. Cadigan, Laura K. Donahue, Tonya L. Genovese, Catherine S. McCrory, William M. McGuffage, and Rick S. Terven, Sr., in their official capacities are to be served at the Board' Chicago office: 69 W. Washington Suite LL08, Chicago, IL 60602.

Attorney General Kwame Raoul is to be served at his Chicago office: 100 West Randolph Street, Chicago, IL 60601.

/s/ Jeffrey M. Schwab