**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

_____

| | | |
|---|---|---|
| JOHN MATTHEW CHANCEY, *et al.,* | ) | |
| | ) | |
| Plaintiffs, | ) | No. 22 CV 04043 |
| | ) | |
| v. | ) | Hon. John J. Tharp, Jr. |
| | ) | |
| THE ILLINOIS STATE BOARD OF | ) | |
| ELECTIONS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

_____

## <u>DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS</u>

Defendant Kwame Raoul, Attorney General of the State of Illinois, submits the following reply in support of his motion to dismiss.

## INTRODUCTION

Plaintiffs merely pay lip service to the State's compelling interest in the integrity and impartiality of its judiciary, including the public's perception of such. Relying only upon an inapposite case, Plaintiffs brush aside any notion that the public interest in judicial elections is served by a ban on out-of-state contributions. Given the concerns unique to an elected judiciary, however, the State has a compelling interest in avoiding the perception that its impartial judiciary is not dominated by external influences; accordingly, Plaintiffs' claim challenging the out-of-state contribution fails.

Likewise, Plaintiffs' attack on the State's prohibition on contributions to independent expenditure committees fails. Plaintiffs skirt around Defendant's proffered rationale for the rule: differences in transparency and disclosure requirements. Furthermore, Plaintiffs mischaracterize

Defendant's position by emphasizing a line of cases foreclosing the State from relying on *quid pro quo* corruption as a justification for limits on contributions to independent expenditure committees. But contribution limits to independent expenditure committees are justified by the State's interest in ensuring that the public perceives its judiciary to be fair, impartial, and insulated from the influence of dominant donors—an independent interest that Plaintiffs fail to fully address. While many cases note that the prevention of *quid pro quo* corruption is not a justification for limiting fundraising by independent groups, Plaintiffs have not proffered a single case holding that such limits cannot be justified in the context of judicial integrity.

For these reasons, Plaintiffs have failed to state a claim and their First Amendment claims should be dismissed.

## ARGUMENT

### I. Plaintiffs' First Amendment Claims Fail as a Matter of Law.

Despite the fact that courts have repeatedly emphasized the differences between judicial elections and those of other political branches, *see, e.g., Jones v. Jegley*, 947 F.3d 1100, 1106 (8th Cir. 2020), Plaintiffs rely entirely upon unavailing cases dealing with overtly political legislative and executive branch elections. But Plaintiffs' failure to meaningfully address these significant differences doom their First Amendment claims.

### A. The State's ban on out-of-state contributions to judicial candidates does not violate the First Amendment.

As recognized by the Supreme Court, "[t]he concept of public confidence in judicial integrity does not easily reduce to precise definition, nor does it lend itself to proof by the documentary record." *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 447 (2015). Nonetheless, it is beyond doubt that the governmental interest in that public confidence is both "genuine and compelling." *Id*. External donors dominating a state's judicial elections and giving the public the

2

impression of a judiciary beholden to outside control could easily shake the public's perception of a fair and impartial judiciary by undermining at least some of the rationale for a judiciary elected by the citizens of a particular state. *See Republican Party v. White*, 536 U.S. 765, 784 (2002) (recognizing that state court judges make common law and have "the immense power to shape the States' constitutions as well"). Thus, while judges should not be swayed by public opinion, affected voters are allowed a say in who should be shaping pertinent legal developments in any state with an elected judiciary.

Rather than confronting the threat to public confidence posed by such a situation, Plaintiffs merely proclaim that "this interest is not a legitimate interest in preserving judicial integrity." Dkt. 16 at 5. Plaintiffs rely on *Landell v. Sorrell*, 382 F.3d 91, 148 (2d Cir. 2002), a wholly distinguishable case that contains no discussion at all of judicial elections. The case certainly does not stand for the proposition that the State has no interest in preserving public confidence by avoiding the impression of a judiciary responsive to the needs of out-of-state contributors. Given the special role of the judiciary in our constitutional system, and its power to mold the law in a particular state, the perception that judicial candidates are too responsive to external influence can imperil the public's perception of a fair, impartial judiciary.

Despite Plaintiffs' assertion otherwise, cases discussing the importance of an impartial judiciary are not limited only to "actions taken by judicial candidates based on the judiciary's ethical duties." Dkt. 16 at 5. In *Hodge v. Talkin*, 799 F.3d 1145 (D.C. Cir. 2015), the court upheld restrictions on the *public's* conduct of certain expressive activity both within the Supreme Court of the United States and upon its adjacent grounds. *Id*. at 1149. In upholding such restrictions, the court noted that the restrictions "reasonably relate to the government's long-recognized interests in preserving decorum in the area of a courthouse and in assuring the appearance (and actuality)

of a judiciary uninfluenced by public opinion and pressure." *Id*. at 1150. While this echoes the very same concerns articulated in *French v. Jones*, 876 F.3d 1228, 1237 (9th Cir. 2017) (noting importance of structurally independent judiciary), nowhere has an interest as paramount as judicial integrity been limited solely to actions by judicial candidates.

Given the State's interest in preventing public confidence in the judiciary from being undermined by the idea of a bench captured by outside influences (and considering the significant repercussions of such), the ban on out-of-state contributions to judicial candidates is justified. Ingratiation and access are valid concerns where the judiciary is concerned, especially where that ingratiation and access is at the behest of outside influences that could have long-lasting effects on the development of common law and interpretation of a State's constitution. While there is of course a concern regarding the effect of disproportionate in-state contributions, these contributions do not undermine the public perception that an elected judiciary acts impartially with the law and interests of the residents of a particular state in mind. The perception of a judiciary reliant upon out-of-state support could seriously cripple public confidence.

Accordingly, Plaintiffs' First Amendment claim challenging the ban on out-of-state contributions fails, and the claim should be dismissed.

### B. The $500,000 contribution limit to independent expenditure committees prevents the appearance of a judiciary subject to the whims of large, less transparent donors.

In response to the State's arguments regarding the constitutionality of the $500,000 contribution limit to independent expenditure committees, Plaintiffs begin once again from a faulty premise: that "no court has ever held a state's interest in judicial integrity extends to an interest in preventing persons who are not themselves judicial candidates from exercising their First Amendment rights." Dkt. 16 at 6. But, as discussed above, *Hodge* provides a clear example of a

case where the court deemed the abridgment of expressive conduct appropriate in light of the importance of the perception of an unbiased and insulated judiciary. *Supra*, at pp. 3-4.

Plaintiffs assert that Defendant must "confront the long line of cases explaining that independent expenditures *cannot* corrupt." Dkt. 16 at 6. But Defendant agrees that independent expenditures generally do not create a risk of *quid pro quo* corruption. Dkt. 12 at 14. In the unique context of the judiciary, though, substantial independent expenditures can and do "create the perception of a judiciary subject to the whims of major donors"—donors that are often able to more easily obscure their identities or sources of funding. Dkt. 12 at 14-15.[1] Plaintiffs fail to address the State's concern with the public perception of overwhelming funding by certain actors in a judicial election, and tellingly overlook instances where public confidence in the impartiality of the law was questioned in the past with nary a mention of the extensive media coverage regarding the Illinois Supreme Court and allegedly outsized funding from State Farm.

In their response, Plaintiffs assert without any support that "[a] judicial candidate is unlikely to even know who the donor to an independent expenditure committee is," Dkt. 16 at 6, and go on to hypothesize that a donor cannot exert influence over a judicial candidate "who does not know who the donor is and who has no contact with the donor." Dkt. 16 at 8. But this assertion ignores the damage to public perception that such contributions create, and in any event simply goes too far as a descriptive matter.

Although independent expenditure committees cannot coordinate with candidates, Plaintiffs have identified nothing prohibiting individual donors from making their support known to a candidate. Moreover, this support could be more easily hidden from the public due to different

---

[1] For that reason, Plaintiffs are simply wrong to assert that Defendant does not justify the statutory provisions in question on traditional anticorruption grounds, Dkt. 16 at 1-2; rather, the interest in judicial integrity identified in *Williams-Yulee* encompasses those grounds. *Williams-Yulee*, 575 U.S. at 455.

disclosure requirements—despite the fact that a candidate may be aware of the support. Substantial funding of over $500,000 could certainly give the impression that the judiciary was reliant on the support of certain major funders—even if some funding were funneled through independent channels—a risk illustrated by State Farm allegedly contributing money to its favored candidate in the 2004 Illinois Supreme Court election through campaign contributions as well as 501(c)(4) or (c)(6) organizations. Dkt. 12 at 14.

For these reasons, Plaintiffs have failed to state a claim that the $500,000 contribution limit to independent expenditure committees violates the First Amendment, and their claim should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant his motion to dismiss.

Respectfully submitted,

KWAME RAOUL
Attorney General of Illinois

By:    /s/ *Erin Walsh*
       Erin Walsh
       Marci Sahinoglu
       Assistant Attorneys General
       100 W. Randolph Street, 13th Floor
       Chicago, Illinois 60601
       erin.walsh@ilag.gov
       marci.sahinoglu@ilag.gov

       *Counsel for Defendants*